UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PATRICK GRIER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | Civil Action No. 23-CV-12395-AK |
| v. | ) | |
| | ) | |
| STEPHEN KENNEDY, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

**KELLEY, D.J.**

Before this Court is a pro se amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner Patrick Grier ("Mr. Grier") filed the petition against Stephen Kennedy ("Respondent"), superintendent of the Massachusetts Department of Corrections, on five grounds: (1) lack of a Batson hearing, which conflicts with state and federal standards; (2) the state appellate court never ruled on the gender portion of his Batson objection; (3) his equal protection right was violated when peremptory challenges were used to discriminate against young jurors; (4) the trial judge's jury instructions violated his right to a fair and impartial jury and his right to due process; and (5) improper lay opinion testimony. [Dkt. 32].  For the following reasons, Mr. Grier's Amended Petition for Habeas Corpus [Dkt. 32] is **DENIED**.

**I.    BACKGROUND**

In June 2010, Mr. Grier was convicted by a Suffolk Superior Court jury for murder in the first degree and unlawful possession of a firearm. [Dkt. 32 at 1].  He was sentenced to life in prison without the possibility of parole. [Id.].  Mr. Grier appealed to the Supreme Judicial Court

1

of Massachusetts ("SJC") and presented multiple arguments for review, including, as relevant to this case: the trial judge abused its discretion in refusing to require the Commonwealth to provide a race- and gender-neutral reason for its use of peremptory challenges; the prosecutor's use of preemptory challenges to strike potential jurors based on their youth violated Mr. Grier's right to a fair and impartial jury; the judge's instructions to the venire that an impartial juror must put aside their personal experiences, thoughts and opinions was a structural error requiring reversal; and the judge's allowance of opinion testimony by a detective improperly bolstered the Commonwealth's case and was a backdoor means of identifying Mr. Grier as the shooter. [See Dkt. 38-1 at 22].

The SJC affirmed the trial court's judgments on August 9, 2022. [Dkt. 32 at 2]. Mr. Grier filed his original habeas petition with this Court on October 16, 2023, which raised eight issues. [Dkt. 1]. On August 28, 2024, this Court conditionally dismissed the petition but permitted Mr. Grier to file an amended petition asserting only his exhausted claims. [Dkt. 29]. On September 23, 2024, Mr. Grier submitted an amended petition for habeas corpus pursuant to 28 U.S.C. § 2254. [Dkt. 32].

## II. LEGAL STANDARD

Where, as here, the state court considered a petitioner's claim on the merits, our review is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006). Under this standard, a federal court may not grant a writ of habeas corpus unless the underlying state court adjudication resulted in a decision that either "(1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.'" Brown v. Ruane, 630 F.3d 62, 66 (1st Cir. 2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

Under subsection (d)(1), "a state court['s] decision is 'contrary to' clearly established federal law . . . if it 'contradicts the governing law set forth in the Supreme Court's cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent.'" Id. at 67 (quoting John v. Russo, 561 F.3d 88, 96 (1st Cir. 2009)).  A state court's decision involves an unreasonable application of clearly established federal law "if the state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (alteration in original) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)).

Relief under subsection (d)(2) requires "a showing that the state court decision 'was based on an unreasonable determination of the facts' on the record before that court." Porter v. Coyne-Fague, 35 F.4th 68, 75 (1st Cir. 2022) (quoting 28 U.S.C. § 2254(d)(2)).  This is a "demanding showing [that] cannot be made when 'reasonable minds reviewing the record might disagree' about the finding in question." Id. (citation modified) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)).  A federal court may not overturn a state court's factual determination "merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010).

### III. DISCUSSION

Mr. Grier raises five issues as grounds for relief: (1) he was not provided with a Batson hearing in violation of state and federal law, (2) the SJC never ruled on the gender portion of his Batson challenge, (3) his equal protection right was violated when peremptory challenges were

3

used to discriminate against young jurors, (4) the trial judge's jury instructions violated his right to a fair and impartial jury and his right to due process, and (5) improper lay opinion testimony was permitted during his trial. [Dkt. 32].

### A.     Peremptory Challenges

To start with Mr. Grier's Batson-based arguments, peremptory challenges to exclude potential jurors on the basis of race and gender violate the Fourteenth Amendment to the United States Constitution. See Batson v. Kentucky, 476 U.S. 79, 89 (1986) ("[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race."); J.E.B. v. Alabama, 511 U.S. 127, 146 (1994) ("[T]he Equal Protection Clause prohibits discrimination in jury selection on the basis of gender.").

Courts analyze criminal defendants' challenges to a prosecutor's exercise of a peremptory strike under the three-step framework established in Batson. First the defendant must make a prima facie case of discrimination. See Batson, 476 U.S. at 96-97. Next, "the burden shifts to the [prosecution] to come forward with a neutral explanation for challenging" the potential juror. Id. at 97. Finally, the trial court must "determine if the defendant has established purposeful discrimination." Id. at 98.

To establish a prima facie case of discrimination, the defendant must show "that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Johnson v. California, 545 U.S. 162, 168 (2005) (quoting Batson, 476 U.S. at 93-94). This standard is "not onerous." Id. at 167. The Supreme Court has not provided an exhaustive list of the types of evidence that demonstrate "an inference of discriminatory purpose." See id. at 169. Nonetheless, courts are guided by examples set forth in other cases applying Batson. For instance, "demonstrating a pattern of strikes against members of a cognizable group may raise an

inference of discrimination against a particular juror." Sanchez v. Roden, 753 F.3d 279, 302 (1st Cir. 2014) (citing United States v. De Gross, 913 F.2d 1417, 1425 (9th Cir. 1990)). Other appropriate factors include "the number of strikes involved in the objected-to conduct; the nature of the prosecutor's other strikes; and, as the 'capstone,' the presence of an alternative, race-neutral explanation for the strike." Id. (quoting United States v. Girouard, 521 F.3d 110, 115-16 (1st Cir. 2008)). Finally, the Supreme Court puts great importance on whether "similarly situated jurors from outside the allegedly targeted group were permitted to serve." Aspen v. Bissonnette, 480 F.3d 571, 577 (1st Cir. 2007) (citing Boyd v. Newland, 467 F.3d 1139, 1148-50 (9th Cir. 2006)); see Miller-El v. Dretke, 545 U.S. 231, 241 (2005) ("More powerful than [the] bare statistics, however, are side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve.").

### 1. Race-Based Challenges

Mr. Grier argues the trial judge violated the Batson standard by refusing "to request an explanation from the Commonwealth" and giving her "own explanation for the challenges of 3 African American women jurors on behalf of the Commonwealth." [Dkt. 42 at 8; see 32 at 5].

On the third day of jury selection, defense counsel raised a Batson objection stating, "with regard to the jurors that Your Honor has found indifferent there have been three African-American women, all of whom [the government] has challenged for cause." [Dkt. 38-7 at 144 ("Day 3 Tr.")]. Defense counsel further noted that "[t]he four jurors as to who Your Honor has found indifferent, with whom the Commonwealth was content, all are middle-aged white men and women." [Id.].

In response, the trial judge accurately stated, "[n]obody is required to articulate the basis for the challenge unless the Court finds a pattern such as to support an inference of a challenge

5

based on a prohibited ground" and asked the government whether they would like to be heard on the issue of "whether the Court should make that finding of a pattern." [Id. at 145]. The government declined. [Id.]. The judge then explained,

> I do not find a pattern. Well, let me rephrase that. I do find a pattern, the pattern is age. It has nothing to do with race. And the pattern with respect to age is clear and obvious and has been consistent throughout, and indeed, is consistent in every criminal case that I try in which prosecutors virtually always challenge young people. I've noticed in this case one exception to that, and the one exception was a young black man who the prosecutor did not challenge. As to race, with that one exception, I do not find a pattern as to race. And I note that we have a very diversified jury. Our jury has included many, many people of color. So, I do not find a pattern, so I am not going to require any information about the other challenges.

[Id. at 145-46].

On appeal, the SJC accurately noted that "[t]he record here does not disclose sufficient information to allow us to discern how many Black potential jurors were peremptorily challenged overall, or whether the over-all percentage of Black jurors who were challenged was higher compared to the corresponding percentage of jurors from other racial groups." Commonwealth v. Grier, 191 N.E.3d 1003, 1013 (Mass. 2022). Thus, the SJC could not determine whether "the number of strikes involved in the objected-to conduct" gives rise to an inference of discriminatory purpose. See Sanchez, 753 F.3d at 302.

The SJC then turned to the presence of an alternative, race-neutral explanation for the strike to determine whether defense counsel established a prima facie case under Batson. See Grier, 191 N.E.3d at 1013-14. The trial judge noted a pattern of age discrimination, which explained the government's challenges. Id.; [Day 3 Tr. at 145-46]. The SJC found that the trial judge's finding of age-discrimination was "well supported given the facts in the record" – eight

6

of the sixteen jurors struck by the government were students and, based upon the record alone, at least two of the three challenged jurors were students. Grier, 191 N.E.3d at 1014.

Although this Court is concerned by the limited record of the jurors' races, the trial judge's failure to address the defenses proposed White comparators, and the SJC's inability to account for the age of the third challenged African American woman, federal courts must defer to state courts. See Porter, 35 F.4th at 75; Wood, 558 U.S. at 301.  Neither the SJC nor the trial judge's determinations were "unreasonable" under the deferential habeas standard.  28 U.S.C. § 2254(d)(1)-(2).

In his Response to Respondent's Answer, though it was not argued in state court, Mr. Grier alleges that an African American man, Juror 89, was also unlawfully challenged on the basis of race by the government. [Dkt. 42 at 5-6].  In that instance, the government challenged Juror 89 for cause because he needed to be reminded of his criminal history. [See Day 3 Tr. at 52].  The judge agreed, explaining, "I have some concerns about comprehension and candor." [Id. at 54].  As evidence that this challenge was on the basis of race, Mr. Grier compare Juror 89 to another juror who needed to be reminded of his criminal history, and who the government argued should stay. [Dkt. 42 at 6-7].  This comparison is not helpful to Mr. Grier's case because, as he acknowledges, the record does not indicate the race of the comparator juror. [Id. at 6]. Accordingly, the Court does not know whether the critical difference in this comparison was present. See Aspen, 480 F.3d at 577; Miller-El, 545 U.S. at 241.

    **2.**    **Gender-Based Challenges**

Mr. Grier also argues that the SJC violated his due process rights by failing to address his gender-based Batson objection to the exclusion of the three African American women jurors. [Dkt. 32 at 7; 42 at 12].

7

Under Harrington v. Richter, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." 562 U.S. 86, 99 (2011). See also Johnson v. Williams, 568 U.S. 289, 301 (2013) (applying the same presumption when a state court opinion "rejects a federal claim without expressly addressing that claim"). In light of this presumption, a statement that the state court has reviewed "the entire record pursuant to G.L. c.278, § 33E" and "there is no other basis for granting the defendant relief" establishes that the state court adjudicated claims not otherwise mentioned. Lang v. DeMoura, 15 F.4th 63, 69 (1st Cir. 2021).

Here, Mr. Grier's gender-based Batson challenge was presented before the SJC and the SJC noted, "[a]fter a full review of the record, [it] discern[ed] no error or other reason warranting relief under G. L. c. 278, § 33E." Grier, 191 N.E.3d at 1027; [see Dkt. 38-1 at 42-48 (raising gender-based Batson objection on appeal)]. Consequently, the Court must presume the SJC adjudicated the claim on the merits and is due deference.

After defense counsel raised their Batson challenge, the trial judge did not immediately address the gender portion of the challenge. [Day 3 Tr. at 144-46]. Rather, later that same day, the judge noted, "I want to make it clear that I also did not find a pattern with respect to sex. And I think for reasons that are not apparent to me, that there was perhaps a disproportion among the people who I found to be indifferent. I think we had more women than men in that category." [Id. at 176]. Because the presence of an alternative explanation is considered in determining whether a defendant has established their Batson prima facie case, and the trial judge found that women were disproportionately found to be indifferent, this Court will not disturb the trial judge and the SJC's determinations under the deferential habeas standard. See

Sanchez, 753 F.3d at 302 (listing the presence of an alternative explanation that does not rely upon a protected category as a factor when determining whether the defense established a prima facie case under Batson.).

### 3. Age-Based Challenges

Mr. Grier next claims that the prosecution's use of peremptory challenges to exclude young potential jurors violated the Equal Protection Clause. [Dkt. 32 at 8; 42 at 13]. This claim is also unavailing. As Mr. Grier acknowledged "every court of appeals to have considered the question has held that age is an acceptable race-neutral justification for exercising a peremptory challenge." [Dkt. 42 at 14 (citing United States v. Helmstetter, 479 F.3d 750, 753-54 (10th Cir. 2007) (collecting cases))]. See also Commonwealth v. Lopes, 91 N.E.3d 1126, 1131-32 (Mass. 2018) ("[E]very United States Court of Appeals that has considered the issue has rejected the argument that young adults are a protected group for peremptory challenges.").

Nonetheless, Mr. Grier urges this Court to overturn these well-settled precedents. To do so would be outside of the authority granted to this Court under 28 U.S.C. § 2254(d), which allows this Court to grant habeas petitions only where the underlying state court adjudication resulted in a decision that either was contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, the Court also rejects Mr. Grier's third claim.

### B.     Jury Instruction

In addition to his Batson challenges, Mr. Grier argues that the trial judge violated his right to a fair and impartial jury by instructing the jury that if they had "some relevant experience

9

or thoughts or opinions[,]" they should "put that aside" and "decide the case solely on the facts presented." [Dkt. 42 at 15; see 32 at 10].

Federal habeas review is prohibited where a criminal defendant waived their claim in state court by failing to comply with an adequate and independent state procedural rule. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). This principle applies even where the state court went on to conduct a discretionary miscarriage of justice review of the criminal defendants' claims. Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010); Gunter v. Maloney, 291 F.3d 74, 80 (1st Cir. 2002). The Massachusetts requirement for contemporaneous objections to jury instructions is an independent and adequate state procedural ground. Janosky, 594 F.3d at 44 (citing cases).

The only exceptions to this bar to federal habeas review is when the petitioner showed either (1) cause and prejudice for the default, or (2) a "fundamental miscarriage of justice" – i.e., the conviction of an innocent person. See Coleman, 501 U.S. at 750. In turn, "cause" for the legal default can be established by showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

In this case, defense counsel did not contemporaneously object to the trial judge's jury instructions. Grier, 191 N.E.3d at 1016. This was an independent and adequate state procedural defect. See Janosky, 594 F.3d at 44. As a result, the SJC only reviewed and rejected the trial court's jury instructions under the "substantial likelihood of a miscarriage of justice standard."

Grier, 191 N.E.3d at 1016.  Because the state court rejected Mr. Grier's claim on an independent and adequate state procedural defect, this Court cannot review the claim.

### C. Improper Lay Person Testimony

Finally, Mr. Grier objects to the trial court's admission of testimony by a police detective, which he alleges was improper because the testimony was a "backdoor way of identifying [him] as the shooter." [Dkt. 32 at 16; see 42 at 17].  Specifically, Mr. Grier objects to the detective's testimony that (1) in a still image capturing a moment at or closely surrounding the time of the shooting, there was apparently an image of a man raising his arm and (2) the man was wearing a jacket depicting a "C" on the chest. [Dkt. 32 at 16].  At trial, the defense objected to the second piece of testimony but not the first. Grier, 191 N.E.3d at 1024-25; [Dkt. 38-14 at 244, 249-50 ("Day 10 Tr.") (testimony about arm raising, with no objection, and testimony about "C" on the man's jacket, with objection)].

Because defense counsel did not object to the detective testimony about the man raising his arm, the SJC reviewed it under the deferential miscarriage of justice grounds and rejected the claim. Grier, 191 N.E.3d at 1025.  As noted above, the SJC's rejection of Mr. Grier's claim because of defense's failure to object is a rejection based upon an independent and adequate state procedural bar. See supra Section III(B).  Mr. Grier has not argued any cause and prejudice for the default. [Dkt. 42 at 17-18].  Thus, this Court may not review that portion of his claim.

The second portion of testimony was objected to at trial.  However, it concerns errors of state law and does not allege a violation of the United States Constitution, laws or treaties, as required by 28 U.S.C. § 2245.  Errors of state law, alone, do not provide a basis for federal

11

habeas review. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law." (citation omitted)).

Mr. Grier's trial occurred in state court, where Massachusetts rules of evidence applied. On appeal, his attorney argued that the detective's testimony was improper opinion evidence under the Massachusetts evidence rules. [Dkt. 38-1 at 70-75 (defense's appellate brief)]. Accordingly, the SJC held that the detective's testimony was proper under Massachusetts law and did not address any federal issues associated with the claim. Grier, 191 N.E.3d at 1024-26. As there is no federal question that was raised on appeal and the SJC did not address a federal question, this Court cannot address the issue.

In his Response to Respondent's Answer, Mr. Grier argues that the testimony was contrary to Federal Rule of Evidence 701 and violated his due process and fair trial rights. [Dkt. 42 at 17]. These federal allegations were not in his Amended Petition [Dkt. 32 at 16] and, therefore, are not properly before this Court. See Logan v. Gelb, 790 F.3d 65, 70 (1st Cir. 2015) (arguments not included in federal habeas petition are "waived"); Smiley v. Maloney, No. 01–11648–GAO, 2003 WL 23327540, at *16 n.39 (D. Mass. Oct. 31, 2003) ("It is the petition for a writ of habeas corpus, not subsequently filed memorandum, which defines the claims for habeas relief.").

## IV.    CONCLUSION

For the foregoing reasons, Mr. Grier's Amended Petition for Habeas Corpus [Dkt. 32] is **DENIED**.

**SO ORDERED.**

Dated: December 9, 2025    /s/ Angel Kelley
                                                           Hon. Angel Kelley
                                                           United States District Judge